May it please the Court, we're here primarily for two main issues. There are a lot of issues within, subsumed within those two. The two primary issues are the issue of jurisdiction and the issue of the First Amendment with respect to the government's proposed second order forfeiture. With respect to the jurisdictional issue, the courts have struggled with this court in particular. At the original arraignment, nobody showed up because there was no person on the indictment. They sought to indict an unincorporated association, which to my knowledge has only been tried one time and in a misdemeanor in the D.C. District, I believe. Nobody showed up, so the Court just put it over. The U.S. Attorney at the time, the actual U.S. Attorney, went and informed the Court that he couldn't do anything because the defendant didn't have an attorney. Now ordinarily, you would have a bench warrant, you would go out and get that person, but there's no person to get. That didn't stop the government because they then sent two ATF agents to find a member of the club and persuade him to appear as effectively a straw man because there was no person to actually appear because it was an unincorporated association, not a corporation, no person in the legal sense. At that point, the magistrate judge didn't feel it was up to him to deal with it, so he sent it to the District Court, who then heard a motion to dismiss based on jurisdiction. The issue of jurisdiction was raised at the outset. When the Court heard that motion, they wrote in the straw man person who would just appear but was not a party to the action as the defendant, ruled on the motion, and then corrected the record to say he was not the defendant and Even if there was a defect in the indictment, how is that a jurisdictional issue? That's what I'm not understanding as far as I see United States v. Cotton forecloses that argument. I don't think that it's a defect in the indictment when there is no person you could reach to. We've had an entire case and there was nobody you could sentence to confinement. I think that it's an issue that needs to be sorted out, and I believe that had it been a different proposed defendant who was not as cooperative as the Mongols were, where would we be? I mean, on the one hand, it's easy to say, well, we can do this, we can do whatever we want, and I'm going to read the RICO statute a certain way or another way, but as a practical matter, where does that put us? Well, counsel, I understand why you're making the argument and some of the practicality of the argument, but doesn't the RICO statute expressly contemplate that an entity can be subject to a violation of that statute? Yes, subject to state law, because when you bring an unincorporated association into the jurisdiction... So that undermines the argument that you're making, doesn't it? That there's no person and that we're just dealing with an organization. Who's going to speak for that organization? All those problems still exist. No, actually, it's key to my argument, because when you read the statute in California, upon which a court must rely for jurisdiction, it requires that it be a lawful organization, and I point out in the papers that throughout this litigation, the government has maintained that the Mongols were an unlawful organization over and over and over again, and if that's the case and the law is to be applied as it is written, then the Mongols cannot be subject to the RICO statute based on the RICO statute itself. I want to be clear about the argument you're making, because at the start, I was a little bit surprised. Is your argument that this doesn't work because this is an entity and an entity can't be subject to prosecution under the statute, or is your argument that this is not the right kind of entity? Well, actually, part two, it's not the right kind of entity, but it's actually not an entity in the sense that they can be actually dealt with in court as a defendant. In the civil context, you've got a different situation. State law is replete with unincorporated associations being brought into court. That's fine in the civil context. In the criminal context, now you've got a different set of parameters, and here, my argument is that you must have a person, an entity, somebody who you can actually stop. Had nobody showed up in court, who would you enjoy? Would you run around? I have no idea how that would even work. The way the government made it work was, I think, outside of the scope of what should ordinarily be done by the government, because they had somebody appear. Had that person not appeared, I don't know if we're even sitting here. So, to be clear to the court, my answer is part two, and there is no legal entity, I think, within the meaning of a criminal prosecution. So, if the Mongol Nation is an unincorporated association, the California Corporate Code seems to indicate that that would be an entity that could be sued. Now, you say it doesn't qualify under state law because it wasn't formed for a lawful purpose. Is that it? It's an entity. Unincorporated association is recognized by the state as an entity, but your argument is the Mongol Nation is not an unincorporated association because of its purpose. Is that right? Basically, I'm arguing that the government has to stop themselves from taking the position that they are a lawful organization, and the code requires that for an organization. What the RICO statute says is that if anybody who has the ability to own property. What the California statute says is an unincorporated association can own property so they are organized for a lawful purpose. The government, I think, has to stop themselves from taking a different position because it maintains a constant position throughout the litigation that they're unlawful. But the indictment, I'm sorry, the indictment doesn't allege that Mongol Nation exists only for unlawful purposes, does it? Well, I cite to the paragraphs in particular in the brief that they specifically state that they're unlawful, and it's not just this litigation that's going on for, well, this is one before us. But it was the allegation that they exist only for unlawful purposes. Well, they never ascribed a lawful purpose to the club, although the club would disagree, but the government has not done that, and what the government has said limits them and binds them within the four corners of this litigation when it comes to applying the RICO statute, which then relies on the California law. Well, let's assume that the way the indictment was states that it includes unlawful purposes, and we disagree with you that the government has stopped. Do you then agree that the Mongol Nation is an association that could be subject to this forfeiture action? I don't think so, because if they're not subject to the statute itself, I don't think you reach forfeiture. So we're saying that they're an unincorporated association under state law. Let's just assume that for the moment. And then under RICO, they would be a person because they can hold property, I guess, is the RICO definition. Do you disagree with that? No, not as the hypothetical is presented. Okay. But if the court is saying that the intellectual property is something that they own, I think the nature of a collective membership mark makes that completely different. And that is really the core of what is the confusion in this case. We come in and the government tries to treat the intellectual property as if it's some other property, which is difficult in any case, precluded in a lot of ways by trademark law, and with a collective membership mark, particularly problematic. So we can't, I don't think we can just insert the word type, not just any intellectual property, but a certain type. So that goes on to your second argument on the merits of whether this type of property is subject to forfeiture, not to the jurisdictional issue. So if we disagree with you at the Mongol Nation is not an unincorporated association under state law, do we then go on to your merits argument? If you disagree with me, of course, because then there would be jurisdiction. Okay. Which if we want to move on to that argument, we can. But the jurisdictional argument, I think, at the very least, has to be, I think, clarified by the court. Because all sorts of things could have happened in this case, which did not. And by leaving it open, by leaving the question open, by leaving a situation where someone could simply, a different lawyer might have advised them differently. And I think there needs to be clarity on how that situation is going to be handled, that they're going to use the RICO statute in a way other than I think the way it was intended to be specific. Originally, RICO was to root out criminal elements in otherwise legitimate organizations. We had a union, we had the mob operating within the union, directing strikes, doing all sorts of nefarious stuff. You define the enterprise was a bunch of guys within that organization. But you didn't charge the organization. You went to the people, the actual individuals, charged them, and you identified them as the enterprise because the organization in which they operated was simply their environment. That's the way it's supposed to be. Now, had they gone that way, and they've gone that way before, and they were actually individuals they wanted to prosecute, they could have gone that way. But they chose to be cute because this is really just an ongoing battle for the mark. And I guess I should move on to that before I run out of time. I think the critical point with the mark and with respect to the second proposed order is that the judge explicitly found there was no nexus, no nexus between what they were seeking with the mark and what was relevant to the RICO action. Now, that's a factual determination. We can leave aside, I think, the arguments of what the standard of review is because that factual determination is clear, even on the case law side by the government, that that is the purview of the district court. I would also go on to say what they're seeking is vague. Having failed at seizing the patch, they now seek to enjoin the people who own the patch from protecting that patch by legal means. Now, I think that's a poorly crafted retreat from their original position because the record is replete with how this has progressed over the years. They wanted the patch. Make no mistake, this was not something where they decided we're going to take away their ability to litigate. This is what they retreated to after a lot of defeats. And probably the most important point I can make is I don't think they thought it through because I don't think there is a more, well, there probably are, but it's a very good way to promote violence if you say we're going to make it open season for anybody who wants to infringe on the Mongol's mark and we'll make sure that you can't be sued for doing it because some Mongol feels strongly about his right of association may have a lapse in judgment. I'm not saying it would happen, but it surely would. And does the court want to set up that environment, that outcome? Because that would be the consequence of giving the government which they seek, which for the reasons I think well spelled out by the district court is impermissible here based on the facts, the findings, and what was derived at trial. Most specifically the fact that there's no nexus. You want to save some time for rebuttal? Yes, if there are no other questions, I would. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court. Bram Alden for the United States. The district court correctly denied Mongol Nation's motion for a judgment of acquittal, but incorrectly nullified the jury's forfeiture verdict by failing to impose the government's second proposed order. As to the motion for acquittal, two basic premises that I would start with. One, obviously an entity can be sued as a RICO person. That is well established by all sorts of cases, including Supreme Court law that the government cited. A&P trucking establishes that bedrock principle that an entity can be sued as a person. The second basic bedrock principle is that an entity, when sued, has to be represented by an individual who is a member of that entity. In this instance, someone from Mongol Nation did appear on behalf of the entity. Once you get past those, I would agree with Judge Thomas's question, which is, isn't this just a challenge to the indictment, and isn't it foreclosed under Cotton as a jurisdictional argument? That is true. Under Cotton and under this court's decision in Radigan, all that is necessary to establish subject matter jurisdiction is that the government alleges a violation of federal law. Then under 3231, we have established jurisdiction. This defect in the indictment that Mongol Nation alleges, the court can address it in one of three ways. Either it was waived because it wasn't raised as part of a Rule 12 motion, or it is legally or factually meritless. Legally, a RICO person does not have to or does not exclude an individual. As a matter of law here, an entity that holds property or has the ability to hold property is certainly prosecutable as a RICO person. The third way that this court could resolve that is simply to say, in fact, Mongol Nation did hold property. They hold the marks that the government has sought to forfeit. They held $500,000 that they have paid as their fine, and they hold assorted other property that was also forfeited in the course of this proceeding. Unless the court has questions about the judgment of acquittal and Mongol Nation's direct appeal, I would then move on to the forfeiture issue. On the forfeiture issue, this court conducts de novo review under Bajikadzian and this court's decision in Phillips. And the forfeiture provision under RICO is mandatory. The government had to prove a nexus between the property and the offense and the property itself, not any right appurtenant to that property. That is Rule 32.2. And here, I would say the clearest nexus was the marks were used as a source of influence over the Mongols gang, the RICO enterprise. I just have a practical question, I think. I'm, for the life of me, trying to figure out what the government is actually trying to do. And sort of the comments from your opponent about this was really about getting these marks, and that didn't work for various reasons. I don't understand practically what the government thinks it's accomplishing by what it's seeking now. So, of course, the government sought a broader forfeiture order to begin with, and what it ended up proposing as part of the second proposed forfeiture order. What it initially sought in this proceeding was a forfeiture that would have vested title to the marks in the government, which would have then given the government the ability to sell the marks the way they did in the Mustang Ranch case, where they actually did obtain value for the marks that they forfeited. Ultimately, however, where we are today is that because the district court had First Amendment concerns and Eighth Amendment concerns with the government's proposed forfeiture order, we continually narrowed what we were requesting to the point where all we are asking for now is that Mongol Nation be precluded from using trademark law and weaponizing it against what they would call potential infringers of the mark. I understand that may not be much, but that is the limited relief that the government is now seeking in accommodating the district court's constitutional concerns. Opposing counsel argues that that's not a property interest that can be forfeited, just as a matter of trademark law. The district court alluded to this as well, that under trademark law, the interest is in protecting the consumer's confusion. I'm just not aware of any case or any principle that would make the right to prevent someone to somebody's right to enforce their trademark would be a property interest vested in the government, as the RICO statute requires. Can you explain the reasoning there? According to the second proposed order, it would not be vested in the government at all. The first question would be, isn't that what RICO requires? That all right title and interest in property described in that section vests in the United States. I think that ultimately the only reason we would prescribe the government's interest here to something so narrow is to accommodate the constitutional concern. Initially, we did ask for vesting of the marks in the government. What this remedy would ultimately end up being equivalent to is trademark cancellation, which is permitted, of course, under trademark law under 815 USC section. Is it the forfeiture of property? Because that's what we're here about. It doesn't appear to be a property that's being forfeited. That's my problem. It would be forfeiture of the right. Of course, RICO permits forfeiture of both tangible and intangible property rights. They would be losing the right to enforce their trademark right against any potential infringement. Right. But then isn't the problem there, as I could have just noted, that RICO requires that when property is forfeited, that title vests in the United States, but you're not asking for that here. So I'm I'm also struggling to understand what what exactly is the legal mechanism that you're trying to use to accomplish this, these ends. It would be entirely what RICO permits, except as narrowed by the First Amendment. So what the government sought here was to have the property vests in the United States. And if the court believes that that is necessary in order to enforce the jury's verdict, which required forfeiture, then it should direct the district court to impose the government's first proposed forfeiture order. However, RICO, in this instance, has to be limited and narrowed only by the constitutional concern that the which is why the government ultimately said we are willing to not have the property vest in the United States, even though that is the initial request we made. We made that more modest offer to accommodate the First Amendment concern and ensure that there was no chilling effect on speech. Why isn't what you're trying to do really a forced abandonment of a mark? And then we get back to Judge Okuda's line of questioning of how is that a property interest of that we can forfeit? I mean, the fact that you analogize to cancellation, which is a completely different mechanism, makes it seem less like the forfeiture of a property interest and more like attempting to do something that the RICO statute doesn't or at least the forfeiture aspect of it doesn't allow. Well, of course, if the marks had vested in the United States, the correct order. And what I'm saying, Your Honor, is if the marks had vested, the second order would have been encompassed within that first order insofar as Mongol Nation, of course, would have lost the ability to enforce a mark against someone else because they would no longer have the mark at all. At this point, the narrow remedy, I do think, is analogous to cancellation of a trademark, which is a property interest. As the district court itself pointed out, Hells Angels has used its own trademark in litigation to sue Toys R Us and actually recovered settlement in that case. So it's not impossible or beyond imagination that a gang can take a trademark interest, a right against suing potential infringers and derive value from that. At this point, that is all the government is seeking because that is all the district court put us in the position to be allowed to seek given its constitutional concerns. I do think, however, that the court had the obligation to impose a forfeiture order, as limited as it may be, under RICO because the jury made a forfeiture finding and all that was a RICO conspiracy, and we established that they had used the marks as a source of influence over the gang. At that point, there had to be some forfeiture order. And if the court believes that something broader is necessary to accommodate the statute, then it should simply direct the district court to issue an order that's broader than what the second proposed order actually requested. Would an order vesting title to the marks to the government violate the principle against transfer of a mark in gross? No, because as long as the mark has some commercial goodwill or really an interest that could be derived from using the mark and selling the mark to consumers, that interest is not simply a transfer in gross. It is a pertinent to the transfer. And here, the government would be able to, as they did in the Mustang Ranch case, theoretically, sell its value in the marks to a potential buyer. That may be a limited value, but anyone can go on Google and actually search for Mongol Nation and find people selling products bearing these marks. The Mustang Ranch case, there was a commercial enterprise. There was a business going on. So that made more sense. Here, it's an associational mark. That's true, Your Honor. But there was evidence in this case, too, that during the forfeiture phase of trial, there was an agent who testified about all the products that this mark is placed on and that he had purchased, too. As a member who had infiltrated the gang undercover, he had property bearing the marks, which, if there were another commercial user of these marks and Mongol Nation continues to hold them, they could sue for infringement under that theory. Unless the Court has other questions, the government is prepared to submit. Apparently not. Thank you. You have some time for rebuttal. I'll start from the last, first. Marks that Mongol Nation sells, they sell within themselves. These things are not available to the public. This is not a commercial enterprise at all. No one can wear, display, do anything else with the mark except for a club member. So it's not commercial in that sense. With respect to the dangers of, for example, the Hells Angels bringing people to court to sue for infringement, I would think the Court would promote that as a way to resolve the dispute as compared to what the alternative would be where they precluded from doing so, which is one of the big dangers of the government's second proposed forfeiture order. To be clear, the inability to take the mark wasn't over constitutional issues. It was over the transfer and gross, and particularly when you've got a collective membership mark. Of course, I'm sure aware that the mark only has a meaning when it's associated with the product that it describes. Government cannot be that thing. It was never, 50 different ways they couldn't have it, that was one of them, but it was never just based on the constitutional issue. Now moving back to the judicial forfeiture mandatory, being mandatory. That is true to the extent it's then required under Bush that the Court review the forfeiture for constitutional issues. Now this wasn't a blanket denial that the Court gave. There were many, many, many articles that were forfeited to the government. There were some that he thought had a sufficient nexus, other things he did not. So it wasn't like the Court just blanketly said, we're not going to let you take anything from them. He took the things, he allowed them to forfeit the things which were truly subject to forfeiture under the law properly. It seems like the only hiccup here is the statute says if there's a nexus found, then forfeiture is mandatory. And even as to these finding of nexus, so then what do we do with that? And is your response that it's basically just impossible, or is there some other argument? No, I think we're talking about two different things. What he found the nexus of was some of the articles people were wearing at the time they were alleged to have committed certain acts. He found some of the articles that were involved in certain acts to have sufficient nexus. What he did not find was that the right to sue somebody in court to stop an infringer, there was no sufficient nexus for that, which is what we're talking about. Well, I thought the nexus finding had to do with the marks themselves. I think he wrote it in a broader sense, but he was addressing the second proposed forfeiture order. So as I read it, however he may word it in the opinion without being particularly precise, what he was addressing was the goal of the government to enjoin basically the mongrels from having access to the court. So I think they're two separate things. Some of the articles he did find, but not the right to protect your mark in court. Okay. I believe that is all I have unless the court has any questions. Thank you. We thank both sides for their argument. The case of United States versus Mongol Nation is submitted.
judges: IKUTA, FORREST, THOMAS